TERRELL, Justice.
In 1945 Walter R. Clark, Robert L. Clark, Gordon F. Williams and H. S.‘ McLean organized Broward Amusement Company, an unincorporated association, to engage in bolita and slot machine business. Walter R. Clark and Robert L. Clark,’hereinafter referred to as Clark brothers, contributed no motley or assets to the business. Williams and McLean contributed’' slot machines. Clark brothers each received one-third of all proceeds from ;the bolita business, the remaining third was divided between Williams and McLean. Clark brothers received one-third of the profits from the slot machine business to be divided between them. Williams and McLean each received one-third of the profits from, said business. Broward Amusement Company flourished until July 14, 1947, when McLean was “squeezed out”-,and the $10,511.45 due him was credited on- the books to the other *806 partners and the name of the company was changed to Broward Novelty Company. Each partner, Robert L. Clark, Walter R. Clark and Gordon F. Williams, was credited with 33i^% interest in the enterprise. The partnership had a set of books which the court appointed auditor said were kept in such condition that it was impossible for him to audit or verify their correctness prior to 1951.
In 1948, Broward Music Company was .organized but showed very little profit until 1951. It operated music machines generally referred to as “juke boxes.” Robert L. Clark and Gordon F. Williams contributed all the funds (capital stock) to organize Broward Music Company, approximately $27,000 each, the major portion of which was drawn from their account in Broward Novelty Company. Glark brothers (sheriff and chief deputy) being law enforcement officers of Broward County, had no nominal connection with the bolita and slot machine enterprise. Gordon F. Williams was in complete charge of this partnership. Broward Novelty Company operated throughout the county until July, 1950, when Walter R. Clark was summoned to testify before the Kefauver Committee at Miami. Slot machine operations stopped at once but bolita continued until August, 1950, when the partnership folded up. Slot machines of the partnership were sent to Georgia where they are still held in storage subject to government lien. The books of the partnership were secreted in Palm Beach County. Walter R. Clark was removed as sheriff after the Kefauver investigation and that terminated Robert L. Clark’s tenure as deputy sheriff. Walter R. Clark died in April, 1951, and Odelle Pitts Clark, his wife, appellee, was appointed ad-ministratrix of his estate.
Gordon F. Williams operated Broward Music Company so successfully that three years after Walter R. Clark’s death its annual revenue rose to $132,618.58. October 17, 1952, Odelle Pitts Clark, as administra-trix, and Robert E. Clark filed this suit for an accounting of the profits of Broward Novelty Company, Broward Amusement Company, Broward Music Company and Broward Cigarette Service, the last named being a cigarette machine business which was sold prior to Walter R. Clark’s death. The complaint prayed for an accounting of the funds and assets, the appointment of a receiver to operate the business and an injunction to restrain Gordon F. Williams from conducting it further. A receiver was appointed and defendant answered denying the allegations of the complaint, interposed the illegality of the business as a defense to the suit and proffered a counterclaim for back salary due him for management of the business. A motion to produce certain documents which included income tax returns of Clark brothers, all books and accounts and records of Clark brothers was denied. A master was appointed, testimony was taken and defendant moved to dismiss the complaint based on the uncontra-dicted testimony of the auditor to the effect that the sole purpose of the partnership was to operate gambling devices in the form of bolita and slot machines and being so, the whole scheme amounted to nothing more than the enlistment of the court’s aid in the commission of a crime. The court overruled said motion on the theory that the gambling aspect of the partnership had ceased,
Much testimony was taken following the order overruling the motion to dismiss and on June'21, 1954, the master filed his report. He assumed that the order overruling the motion to dismiss had settled the law of the case and recommended that the prayer for accounting be granted. Exceptions were filed to the master’s report, on consideration of which, after argument of counsel, final decree was entered which granted the accounting of properties in question, ordered them sold and the proceeds divided among the partners. Jurisdiction was retained to make other necessary orders in the premises. Defendant has appealed from the final decree.
It is contended (a) that the final decree for accounting and dissolution is not sup *807 ported by the law or the evidence; (b) the trial court erred in ordering an accounting based on the books and records of the partnership.
The final decree among other things contained the following finding:
“ * * * that in 1948 a new and distinct partnership known as Broward Music Company was formed between the same partners; that Broward Music Company did not engage in any illegal enterprises, but was a distinct, separate and severable partnership from Broward Novelty Company. As to the illegal partnership, Broward Novelty Company, the Court is of the opinion that an accounting of funds of said partnership cannot be had in a court of equity, but that the Court does have jurisdiction to order an accounting as to the real property, of Broward Novelty Company. The Court further finds that these assets have been used exclusively by Broward Music Company since July, 1950, and the title to the same is held in the name of the partner Gordon F. Williams for the use and benefit of Broward Music Company and the individual partners.”
The testimony of Joseph Phillips, the auditor, including that gleaned from the books and records of the company, supports this finding. Since this is true and we are furnished with no countervailing evidence, it follows that the main point we are concerned with on this appeal is whether or not the law permits an accounting of the real estate purchased by appellant with funds of Broward Novelty Company, an illegal enterprise but now held and used by Broward Music Company, which is engaged in a legal business.
It is admitted that Broward Novelty Company went out of existence in July, 1950. The evidence shows that Gordon F. Williams acquired certain lands that were later platted as Lots 1 to 9, inclusive,. of Broward Center, with funds of Broward Novelty Company. A building was constructed on said lands with funds of Brow-ard Novelty Company. It is also shown that when Broward Novelty Company expired in 1950, its trucks were listed on the books of Broward Music Company, the slot machines and gambling equipment were confiscated and its lands were taken over by Broward Music Company by whom the taxes have since been paid. The trial court found that the “real estate of Brow-ard Novelty Company had been used exclusively by Broward Music Company since July, 1950, and that the title to same is held in the name of the partner, Gordon F. Williams, for the use and benefit of Broward Music Company and the individual partners.”
It can be readily seen that the only point in this suit is, who is entitled to the real estate or the proceeds from it. The court limited the accounting as to the real estate. As against the finding of the chancellor, appellant contends that the real estate is his property. He predicates this claim on the contention that he contributed $27,000 to the organization of Broward Music Company, the major portion of which funds was taken from Broward Novelty Company, admitted to be an illegal enterprise; that he [Williams] purchased the lands in his name where they have been for many years; that he borrowed money on and placed mortgages on them; that appellees are now attempting to claim two-thirds interest in said lands, notwithstanding they were purchased with the proceeds from gambling operations; in other words, the proceeds of Broward Novelty Company, as an illegal enterprise. Appellant says that said lands were purchased by him with his own profits from the gambling business and that the lower court erred in finding them to be a partnership asset to be accounted for.
In support of his contention, appellant relies on Goldring v. Johnson, 65 Fla. 381, 62 So. 212. This case had to do with the attempt of a wholesale liquor dealer to sell liquor to one who was operating under a license in violation of the liquor laws. The *808 operation was found to be clearly in violation of law, that it was condemned by statute and the court so held. Numerous other cases are cited and relied on which hold in effect that no court will aid one whose cause •of action is based on an illegal or immoral act. Goldring v. Johnson supports a phase of this holding, but here we are concerned with a gambling contract, the profits of which have been invested in other property and the illegality of the gambling transaction it is contended in no way affects the title to such property or subsequent dealings in regard to it if used in a lawful enterprise.
We are not so much concerned here with what is known under similar circumstances as the “completed transaction” or whether this court is committed to it) though it may be said that the trial court had it in mind' when he entered his order of July 10, 1953. It is apparent that the funds of Broward Novelty Company were used to purchase the real estate in question and that they have been used since 1950, in the name of Broward Music Company. Illegal profits have in other words been invested in legal assets, real estate which the courts say doés not bear the stigma of tainted money and may be dealt with in equity in the same manner as other assets. The' courts seem to proceed on the theory that money becomes tainted by the company it keeps or tlie transaction from which it derives and even though deriving from an illegal source, when it passes into clean hands or into a legal enterprise, it is washed of its sin and requires ho other evidence of repentance. In other words, transition from an illegal to a legal enterprise washes it of original sin.
Appellant challenges that part of the final decree recognizing Walter R. Clark as a partner. It is a fact that he may not have made any contribution to the . capital of the companies, but the evidence shows that he left his profits in both Broward Novelty Company and Broward Music Company to be used by them. These facts are sufficient to support his claim of partnership. Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4. The books of Broward Novelty Company show no capital contribution on the part of appellant so any right he may have to precipitate this question will not be discussed at this time. Neither will we discuss appellant’s reason for repudiating his books. The books of Broward Music Company and Broward Novelty Company were by stipulation of counsel and order of court submitted to the accountant, Phillips, whose testimony shows that the two companies were partnerships composed of Walter R. Clark, Robert L. Clark and appellant".
It is last contended that the order of the chancellor dated July 10, 1953, has no place in equity, that it was so prejudicial to appellant as to render the special master’s report ineffective and that the rulings of the court as a whole were so prejudicial to appellant that he was deprived of that which was lawfully due him.
We have examined these contentions but find them without merit.’ While the partnership contract was oral, it was proven beyond question and showed the division of profits among the three partners. It is settled that a court of equity will not entertain a suit to dissolve a partnership to divide illegal funds but when the illegal partnership has been long deceased and its assets converted into a legal purpose or are employed in a legal business, a different question is presented. After all we have said, it may be summarized in this: the questions raised turn on the interpretation of the evidence, some of which was in conflict, that- which was documentary was garbled and difficult of interpretation, but the master and the chancellor had it before them and we can not say that error is clearly revealed.
The judgment assaulted is therefore af-firftied:
Affirmed.
*809 DREW, C. J., and ROBERTS and THORNAL, JJ., concur.
THOMAS, J., and JONES, Associate Justice, dissent.
O’CONNELL, J., disqualified.